27882. PROGRESSIVE LIFE INSURANCE CO. v. JAMES.

DECIDED MARCH 12, 1940. REHEARING DENIED MARCH 26, 1940.

*Craighead & Dwyer,* for plaintiff in error.

*C. L. Redman, R. O. Jackson,* contra.

BROYLES, C. J. H. Grady James brought suit on a policy of life insurance in which his wife was named as the insured, and he as the beneficiary. The sole defense shown by the answer was that the plaintiff had executed a release which completely discharged the defendant from any and all liability on the policy. The jury

returned a verdict in favor of the plaintiff for $249 as principal, $85.68 as interest, and $50 as attorney's fees. The defendant's motion for new trial (comprising the general grounds and several special grounds complaining of certain excerpts from the charge of the court) was overruled, and that judgment was assigned as error. As regards the general grounds, the sole question is, did the evidence show a signed release by the plaintiff that *discharged the defendant from any liability on the policy?* In respect to this issue, the judge in his order denying a new trial made the following statement: "The plaintiff in part testified: 'I signed the release on the policy the day my wife was buried, and the occasion for my signing was that Mr. Cooper [the agent of the defendant who solicited and delivered the policy] said he had to have it to get the insurance. . . When he gave me the dollar and I signed the paper, Mr. Cooper said he had to have some showing for the company, and he was going to take the paper to Atlanta and collect the $250. He said he would have to have the release before he could get the money; said he would have to turn it over to the company in order to get the money, and that was the reason I signed the receipt. I signed the release after I had surrendered the policy, about a week afterwards. Mr. Cooper said he had to have the release signed so he could get my money for me from his company . . I have never read the release until yet. When the application was made out Mr. Cooper asked me to sign it, and I did. I have been knowing Mr. Cooper for several years. . . I was notified that the company was not going to pay the insurance before I signed the release, but I signed it because Mr. Cooper said he had to have it. Mr. Cooper had told me that they were not going to pay, but when I signed that release he told me he was going to get the money for me anyhow. He didn't attempt to explain how he was going to get it, but said he had to have the release. He didn't say that the company had changed its attitude about paying me, but he said he was going to get it, said he would sue them himself. He simply misled me.' Cooper was not called as a witness. The quoted testimony of the witness [James] clearly establishes that he was inexperienced in insurance matters, and that he was literally following the requests of Cooper, the agent, as though he were a child, in first complying with his request to sign his wife's name to the application after Cooper had filled it out,

and also in delivering the policy and the signed release settlement after the death of his wife. If Cooper, the general agent of the company, had not procured the signature of the plaintiff to the release settlement, there could be no question as to the company's liability to pay the indemnity named in the policy. That the plaintiff was misled by Cooper is therefore obvious. . . It is therefore my opinion that the case comes within the exception stated in the following rule of law: 'It is a fundamental principle that one who can read must read; and the signing of a paper would be a waiver of representations alone as to the contents thereof. However, such representations as to the contents of a paper, coupled with a trick or artifice to procure the signing of the same, may constitute such fraud as would relieve the signer of the obligation thereunder.' *Gossett* v. *Wilder,* 46 *Ga. App.* 651 [168 S. E. 903]; *Atlanta Life Ins. Co.* v. *Walker,* 53 *Ga. App.* 80 [184 S. E. 776]. The company acted on the application made out alone by its general agent, Cooper. 'One who solicits insurance, and represents the company in conducting the negotiations which lead up to the execution of the contract and subsequently in the delivery of the contract itself, is the general agent of the company, with reference to that particular contract. Relatively to it, he is as much the alter ego of the company as any other corporate officer.' *German American Life Association* v. *Farley,* 102 *Ga.* 720, 735 [29 S. E. 615]; *Johnson* v. *Ætna Ins. Co.,* 123 *Ga.* 404 [51 S. E. 339, 107 Am. St. 92]. . . This is the second verdict rendered in favor of the plaintiff."

We agree to the foregoing opinion of the able trial judge, and hold that the verdict was authorized by the evidence, and that the several excerpts from the charge, complained of, when considered in connection with the entire charge and the facts of the case, show no cause for a reversal of the judgment. The cases cited in behalf of the plaintiff in error which apparently show holdings contrary to the present ruling, are differentiated by their particular facts from this case.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*