**Robert FULTON, Plaintiff,**

v.

**CITY OF ROSWELL, Defendant.**

**No. CIV.A.1:96CV2388–TWT.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 7, 1997.

George W. Greenwood, Greenwood & Chambers, Roswell, GA, for Robert Fulton.

Richard A. Carothers, Thomas M. Mitchell, Carothers & Mitchell, Buford, GA, for City of Roswell.

**ORDER**

THRASH, District Judge.

This case is before the Court on Defendant's Motion for Summary Judgment [12–1].

**I. FACTS**

This case arises out of the Plaintiff's arrest for public drunkenness on September 25, 1994 by a City of Roswell Police Officer. Roswell claims that the Plaintiff was arrested because he was intoxicated, belligerent, and used profane language in a local restaurant. The Plaintiff claims that he was innocently

eating when a Roswell Police Officer, without any justification, harassed and eventually arrested him. In ruling on this Motion for Summary Judgment, the Court must avoid issues of credibility and resolve all factual disputes in the Plaintiff's favor.

At 12:30 a.m. on September 25, 1994, the Plaintiff and his nephew were eating at a Waffle House in Roswell. It is undisputed that the Plaintiff had consumed two beers earlier in the evening. Plaintiff claims that teenagers at the next table were smoking and the Plaintiff asked them to stop. When they refused, the Plaintiff dropped the issue. When the Plaintiff asked his waitress if he and his nephew could move to another table, she became irritated and told him that he saw the teenagers smoking when he picked his seat.

It is undisputed that at some point this waitress, identified as Tonia Herrin, called the Roswell Police and claimed that the Plaintiff was intoxicated and belligerent. Officer Stanfill responded to the call. According to the Plaintiff, he entered the restaurant and accused the Plaintiff of causing a problem. Officer Stanfill asked him to stand up. When the Plaintiff asked why the officer wanted him to stand Officer Stanfill asked him if he wanted to go to jail. The Plaintiff responded that if Officer Stanfill put him under arrest then he would go to jail. Officer Stanfill then announced to the restaurant that the Plaintiff wanted to go to jail and escorted him from the building.

Once Officer Stanfill had escorted the Plaintiff outside, he asked him for identification. As the Plaintiff attempted to pull out his wallet, Officer Stanfill knocked the wallet from his hands and scattered its contents. Two other Roswell Police Officers, Officer Stancil and Lieutenant Thorne, observed Officer Stanfill's actions. Officer Stanfill then arrested the Plaintiff for public intoxication. Before leaving the scene, Officer Stanfill retrieved the contents of the Plaintiff's wallet. On the way to Roswell City Hall, the Plaintiff asked Officer Stanfill to take him to a hospital so that he could have a blood test to prove that he was not intoxicated. According to the Plaintiff, Officer Stanfill stopped the cruiser and threatened to beat the Plaintiff.

At Roswell City Hall, Officer Betty Harshbarger processed in the Plaintiff. When the Plaintiff was processed, he was relieved of his personal belongings, including his wallet. The Plaintiff then signed an Inmate Property Form stating that his wallet contained $137.00 cash. After the Plaintiff's wife arranged for his bail, the police returned his belongings to him. At this point, the Plaintiff claimed that he had forgotten to put on the Inmate Property Form that he kept a $100.00 bill hidden in his wallet and claimed that this $100.00 bill was now missing. The Plaintiff, convinced that Officer Stanfill had taken the money, filled out a claim report. While he was filling out this report, Officer Stanfill returned to the station. Officer Stanfill threatened to sue the Plaintiff for defamation if he filled out the report. Lieutenant Thorne eventually told Officer Stanfill to leave the building. The charge of public drunkenness was ultimately dead-docketed. The Roswell Police Department thoroughly investigated the Plaintiff's complaint and concluded that Officer Stanfill had done nothing wrong.

Officer Stanfill has been a police officer for the City of Roswell since 1989. He has received several letters of commendation. He has received training on proper arrest procedures at the police academy and at annual training updates. Prior to this case, there have been no complaints against Officer Stanfill for false arrest, false imprisonment, illegal search or seizure, theft, or the use of excessive force. His personnel file includes a few citizen complaints that he has been ill-mannered. While his superiors did not discipline Officer Stanfill for these incidents, they did note them in his record and have suggested that he modify his behavior. Nothing in the personnel file should have put the City of Roswell on notice that he would commit any of the acts alleged by the Plaintiff.

The Plaintiff has not filed an action against Officer Stanfill. In this action against the City of Roswell, Counts I and II assert that Roswell violated the Plaintiff's fourth amendment rights in two ways. First, the Plaintiff claims that Roswell did not establish proper police procedures regarding anonymous tips.

He asserts that when the police receive an anonymous tip they must obtain probable cause through independent observation. The Plaintiff asserts that Officer Stanfill arrested him based upon an anonymous tip and failed to establish probable cause independently to arrest the Plaintiff. Second, the Plaintiff claims that Roswell did not properly supervise and instruct Officer Stanfill about when probable cause exists to make an arrest without a warrant. Counts III and IV of the Plaintiff's Complaint allege violations of state law which, respectively, allege that because Officer Stanfill did not have probable cause to arrest the Plaintiff he committed false arrest and false imprisonment.

## II. DISCUSSION

### A. THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court should view the evidence and any inferences that may be drawn in the light most favorable to the non movant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

### B. COUNTS I AND II—PLAINTIFF'S FOURTH AMENDMENT CLAIMS

■ The Plaintiff claims that Roswell failed to train and supervise Officer Stanfill properly and failed to have an appropriate policy regarding the use of information in anonymous tips for probable cause. Therefore, the Plaintiff claims that Roswell is liable for Officer Stanfill's alleged violation of the Plaintiff's fourth amendment rights.

At the outset, the Court notes that Officer Stanfill did not arrest the Plaintiff based on an anonymous tip. The Plaintiff has offered no evidence at all that the City of Roswell Police Department's policies regarding anonymous tips violate his constitutional rights. The affidavits submitted by the Plaintiff address only the issue of whether the Plaintiff was arrested without probable cause.

■ A municipality is liable for the actions of an officer only if it sanctioned or ordered the actions, the officer had policy-making authority, or the actions were committed pursuant to an official policy. *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 637 (11th Cir.1991). It is undisputed that Roswell did not order Officer Stanfill to arrest the Plaintiff without probable cause and that Officer Stanfill did not have policy making authority. The Plaintiff contends that Officer Stanfill's superiors witnessed the arrest and later saw the Plaintiff and that they were, therefore, aware that Officer Stanfill did not have probable cause to arrest him. Since none of them stopped Officer Stanfill from arresting him, the Plaintiff asserts that they sanctioned Officer Stanfill's actions. The Plaintiff, however, has produced no evidence that suggests that any of these officers were aware that he was not intoxicated. In fact, the evidence shows that the officers who saw him either had no opinion as to his sobriety or believed that he was intoxicated. Therefore, there is no evidence that Officer Stanfill's superiors sanctioned his actions. In any event, their actions would not establish liability on the part of the municipality.

The Plaintiff has produced no evidence that he was arrested because of an official policy that allowed officers to make arrests without probable cause. Instead, he alleges that Officer Stanfill has a history of inappropriate behavior and Roswell's repeated decision not to discipline him shows that such a policy existed. However, the Plaintiff cannot link these isolated instances of inappropriate behavior together to form a policy regarding probable cause. Other than the Plaintiff, no one has ever complained that Officer Stanfill arrested them without probable cause. The

prior complaints only suggest that, at most, Officer Stanfill was occasionally rude and unprofessional. Having poor social skills is very different from arresting people without probable cause.

Finally, the Plaintiff has produced no evidence that Roswell failed to train Officer Stanfill adequately. To the contrary, the evidence clearly shows that Roswell properly instructed Officer Stanfill regarding the probable cause standard for arrests without warrants while he was at the police academy and since. The evidence also shows that Roswell regularly and continuously provides training for its officers about proper arrest procedure including the probable cause standard. Accordingly, the Defendant is entitled to summary judgment with respect to the claims asserted in Counts I and II.

## C. COUNTS III AND IV—STATE LAW CLAIMS

Roswell claims that the Plaintiff failed to provide *ante litem* notice of his state law claims as required by O.C.G.A. § 36–33–5. That statute requires that, within six months after an incident, anyone with a claim against a municipality for damages incurred from that incident must give notice to the municipality in writing before bringing an action in Court. The evidence clearly shows, and the Plaintiff has not disputed, that he did not send Roswell such notice within six months after Officer Stanfill arrested him. Compliance with this statute is a condition precedent to suing a municipality under Georgia law and failure to comply is an absolute bar to a state law claim. *Camp v. Columbus*, 252 Ga. 120, 121, 311 S.E.2d 834 (1984); *City of Atlanta v. Barrett*, 102 Ga.App. 469, 471, 116 S.E.2d 654 (1960). As a matter of law the Plaintiff's failure to give Roswell notice within six months after Officer Stanfill arrested the Plaintiff is a complete bar to the Plaintiff's state law claims. In addition, the City of Roswell has sovereign immunity as to all of the Plaintiff's state law claims. *See* O.C.G.A. § 36–33–3. Therefore, Roswell is entitled to summary judgment as to the claims asserted in Counts III and IV.

## III. CONCLUSION

Accordingly, this Court hereby **GRANTS** Defendant's Motion for Summary Judgment [12–1].

**SO ORDERED**, this 7th day of November, 1997.